UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-893-GW(SKx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | *Kimberly Boyle v. Adler and Associates Entertainment, LLC, et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie E. Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Lawrence J. Zerner

Attorneys Present for Defendants:

Amy B. Lawrence
Brett H. Oberst
Marc Allaria

**PROCEEDINGS:** **DEFENDANT ADLER & ASSOCIATES ENTERTAINMENT, LLC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS AND/OR STAY THE LITIGATION [25]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, the Court will stay this action pending the consolidation of arbitration matters. The Motion is continued to September 12, 2019 at 8:30 a.m., with a joint status report to be filed by September 10, 2019.

: 17

Initials of Preparer   JG

<u>**Boyle v. Adler & Assocs. Entm't, LLC, et al.**</u>; Case No. 2:19-cv-00893-GW-(SKx)
Tentative Ruling on Motion to Compel Arbitration and/or Stay

**I. <u>Background</u>**

    **A. Factual Background**

Kimberly Boyle ("Plaintiff") sues Adler & Associates Entertainment, LLC ("Adler"), Amazon.com, Inc. ("Amazon"), Dreamscape Media, LLC ("Dreamscape"), and Does 1-10 (collectively, "Defendants") for copyright infringement under 17 U.S.C. §§ 101 *et seq*. *See* First Amended Complaint ("FAC"), Docket No. 15. Charis Feeney-Orchard ("Feeney-Orchard"), a defendant in the original complaint, was terminated after the filing of the FAC. *See* FAC; Apr. 11, 2019 Civil Minutes, Docket No. 16. This case arises out of Defendants' distribution of a film based on Plaintiff's screenplay allegedly without Plaintiff's permission. *See* FAC ¶¶ 4-18.[1]

    *1. Allegations in the FAC*

In or about 2007, Plaintiff wrote a motion picture screenplay titled "Casanova – Lost and Found" ("the Screenplay"). *See id.* ¶ 4. She registered the Screenplay with the U.S. Copyright Office on May 22, 2014 and received registration number PAu003726542. *See id.*

On or about November 4, 2014, Plaintiff entered into a Screenplay Option Purchase Agreement ("the Option Agreement") with Feeney-Orchard. *See id.* ¶ 5. Under the terms of the Option Agreement, Feeney-Orchard paid Plaintiff $500 for a one-year option to purchase the Screenplay. *See id.* To execute the option and purchase the Screenplay, Feeney-Orchard would pay 3% of the final budget of the motion picture, with a minimum payment of $125,000 and a maximum payment of $250,000. *See id.* Alternatively, Feeney-Orchard could extend the option period for an additional year by giving Plaintiff written notice and $1000 prior to the expiration of the option period on November 4, 2015. *See id.*

Feeney-Orchard did not pay the purchase price or pay the option extension fee before the expiration of the option period. *See id.* ¶ 6. On November 4, 2015, the rights to the Screenplay reverted to Plaintiff. *See id.* Later, she learned that Feeney-Orchard had produced a motion picture titled "Perfect Piece" ("the Motion Picture") based on the Screenplay without notifying Plaintiff. *See id.* ¶ 7. Plaintiff was credited as the screenwriter in the credits of the movie and on IMDB.com.

---

[1] The FAC restarts paragraph numbering on page 3, under "Jurisdiction and Venue." The paragraphs cited here correspond with the numbering that begins on page 3, unless stated otherwise.

1

*See id.*

On or about January 5, 2016, Plaintiff's attorney sent a letter to Feeney-Orchard demanding that she stop all further attempts to distribute the Motion Picture until the purchase price of $125,000 was paid in full.  *See id.* ¶ 8.  Feeney-Orchard refused to pay the purchase price.  *See id.*  On August 8, 2016, Plaintiff sent a written agreement to Feeney-Orchard and Adler, Feeney-Orchard's agent, having Feeney-Orchard instruct Adler and any distributors, sub-licensees, agents, or representatives of the film to remit payment to Plaintiff until she received $125,000.  *See id.* ¶ 9.  The written agreement was conditioned upon Feeney-Orchard and Adler agreeing to the terms by August 22, 2016, but Adler never signed the agreement.  *See id.* ¶ 10.

Adler is actively distributing the Motion Picture, which is available for streaming on Amazon Prime.  *See id.* ¶ 11.  Feeney-Orchard and Adler entered into a contract with Dreamscape, which is currently distributing the Motion Picture on DVD throughout the United States.  *See id.* ¶ 12.  On or about October 30, 2018, Plaintiff emailed Amazon saying Amazon Prime was streaming the Motion Picture without her permission or a license.  *See id.* ¶ 13.  Amazon acknowledged receipt of her email but has taken no steps to remove the Motion Picture from its website.  *See id.*

### 2. Additional Evidence in Exhibits

Under the terms of the Option Agreement between Plaintiff and Feeney-Orchard, the purchase price is described as "3% of the final budget of the Picture (with exclusions for contingency, actual bond fees, finance charges and purchase price for screenplay), floor of $125,000, cap of $250,000."  Feeney-Orchard Decl. ¶ 3, Ex. A at 5, Docket No. 25.  Additionally, the Option Agreement has an arbitration provision providing the following:

> (g) Arbitration: Any controversy or claim arising out of or in relation to this Agreement or the validity, construction or performance of this Agreement, or the breach thereof, shall be resolved by arbitration using the rules and procedures of the International Film and Television Alliance[2] using a single arbitrator.  The parties agree that they will abide by and perform any award rendered in any arbitration conducted pursuant hereto, that any court having jurisdiction thereof may issue a judgment based upon such award and that the prevailing party in such arbitration and/or confirmation proceeding shall be entitled to recover its reasonable attorneys' fees

---

[2] The rules of the International Film and Television Alliance are available at www.ifta-online.org/rules-international-arbitration.

2

          and expenses.  The arbitration will be held in Los Angeles and any award shall be final, binding and non-appealable.

*Id.* at 11.

Plaintiff interpreted the purchase price language to mean that the stated floor and cap refer to the final purchase price itself, so that Feeney-Orchard would pay at minimum $125,000.  *See* FAC ¶¶ 5, 7-9.  Feeney-Orchard and Defendants contend that the purchase price language means that the stated floor and cap are of the budget, so that Feeney-Orchard would pay at minimum $3750.[3]  *See* Defendant Adler's Notice of Motion and Motion to Compel Arbitration ("Motion") at 10, Docket No. 25.

On August 2, 2015, Feeney-Orchard entered into a Sales Agency Agreement with Adler ("Sales Agreement") containing an arbitration clause.[4]  *See* Lunt Decl. ¶ 3, Ex. A, Docket No. 25. The Sales Agreement designated Adler as the exclusive sales agent for the Motion Picture.  *See id.* On December 8, 2017, Adler entered into a distribution agreement with Dreamscape containing an arbitration clause.[5]  *See id.* ¶ 4, Ex. B.  The license terms included exclusive video rights and non-exclusive internet rights.  *See id.*  Adler also entered into a digital license agreement with Amazon containing an arbitration clause.[6]  *See id.* ¶ 5, Ex. C.  The license agreement was an online

---

[3] 3% x $125,000 minimum = $3750.

[4] Adler's Sales Agreement with Feeney-Orchard contains the following arbitration clause:

        Any controversy or claim arising out of or in relation to this Agreement or the validity, construction or performance of this Agreement, or the breach thereof, shall be resolved by final, binding and non-appealable arbitration under the Rules for International Arbitration of the International Film and Television Alliance (I.F.T.A.) in effect when the arbitration is filed (the "I.F.T.A. Rules").  Each party waives any right to adjudicate any dispute in any other court of forum, except that a Party may seek interim relief before the start of arbitration as allowed by the I.F.T.A. Rules . . . .

Lunt Decl. ¶ 3, Ex. A at 15.

[5] Adler's "IFTA INTERNATIONAL MULTIPLE RIGHTS DISTRIBUTION AGREEMENT" with Dreamscape contains an arbitration clause stating:

        Dispute Resolution: Any dispute arising under this Agreement, including with respect to any right or obligation that survives termination or cancellation of this Agreement, will be administered and resolved by binding arbitration under the IFTA Rules for International Arbitration ("IFTA Rules") in effect as of the Effective Date and in accordance with Paragraph 16.12 of the IFTA International Standard Terms . . . .

*Id.* ¶ 4, Ex. B at DT-6.

[6] Adler's "PRIME VIDEO DIRECT DIGITAL LICENSE AGREEMENT" with Amazon includes the following arbitration clause:

        Any dispute or claim arising from or relating to this Agreement or the Program is subject to the binding arbitration, governing law, disclaimer of warranties and limitation of liability and all other terms in the Amazon.com Conditions of Use.  You agree to those terms by entering into this Agreement or using the Program.  The United States Federal Arbitration Act, applicable United

form through Amazon's digital self-publication and distribution program. *See id.*

Two arbitrations are already pending before the International Film and Television Alliance ("IFTA"). *See* Motion at 8. The first, filed on or about April 11, 2019, involves Feeney-Orchard against Plaintiff, based on the arbitration agreement in the Option Agreement. *See* Lawrence Decl. ¶ 2, Ex. A, Docket No. 25. The second, filed on or about April 25, 2019, involves Adler against Feeney-Orchard, based on the arbitration agreement in the Sales Agreement. *See id.* ¶ 3, Ex. B.

**B. Procedural History**

Previously, Feeney-Orchard was a defendant in the original complaint and filed a request for a motion to dismiss. *See* Request to Dismiss Case, Docket No. 14. Plaintiff filed the FAC dropping Feeney-Orchard as a defendant, so the Court terminated Feeney-Orchard and vacated her motion. *See* Apr. 11, 2019 Civil Minutes; *see generally* FAC. Before the Court is Adler's Motion to Compel Arbitration and Dismiss and/or Stay the Litigation.[7] *See* Motion. Plaintiff filed an opposition to the Motion. *See* Plaintiff's Opposition to Motion ("Opp'n"), Docket No. 28. Adler replied. *See* Reply, Docket No. 31.

**II. Legal Standard**

The Federal Arbitration Act ("FAA"), at 9 U.S.C. § 2, reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2010) (citation omitted). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). A party aggrieved by the refusal of another party to arbitrate under a written arbitration agreement may petition the court for an order compelling arbitration as provided for in the parties' agreement. *See* 9 U.S.C. § 4. "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original); *see also* 9 U.S.C. § 4. "The court's role under the Act is therefore limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response

---

States federal law, and the laws of the State of Washington, without regard to principles of conflict of laws, will govern this Agreement and any dispute of any sort that might arise between you and Amazon relating to this Agreement or the Program.

*Id.* ¶ 5, Ex. C at 15.

[7] This motion is joined by Defendants Dreamscape and Amazon. *See* Docket Nos. 26, 27.

is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (quoting *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 540 (E.D. Pa. 2006)).

On a motion to compel arbitration, courts apply a standard similar to the summary judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citing *McCarthy v. Providential Corp.*, No. C 94-0627, 1994 WL 387852, at *2 (N.D. Cal. July 19, 1994)). Under Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "[T]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (quoting *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001)) (internal quotation marks omitted). Similarly, at the summary judgment stage, courts do not "focus on the admissibility of the evidence's form," but rather "on the admissibility of its contents." *Fraser*, 342 F.3d at 1036. Objections based on a failure to comply with the technicalities of authentication requirements or the best evidence rule are, therefore, inappropriate. *See Adams v. Kraft*, No. 5:10-CV-00602-LHK, 2011 WL 5079528, at *25 n. 5 (N.D. Cal. Oct. 25, 2011) ("On summary judgment, unauthenticated documents may be considered where it is apparent that they are capable of being reduced to admissible evidence at trial"); *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (holding that even if declaration violated best evidence rule, court was not precluded from considering declaration in awarding summary judgment).

Additionally, the FAA allows the Court to stay an action "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under [a written] agreement." 9 U.S.C. § 3.

### III. Analysis

### A. Validity of the Arbitration Agreement

"[T]he federal policy favoring arbitration is inapplicable to the determination of whether a valid agreement to arbitrate between the parties exists." *Campos v. Campos Family Farms, LLC*, No. 12-598-LJO, 2012 WL 2090303, at *8 (E.D. Cal. June 8, 2012) (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006)). Rather, that determination is made by reference to ordinary state law contract principles. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). As the party moving to compel arbitration, Adler bears the burden of proving by a preponderance of the evidence the existence of a valid arbitration agreement. *See Lucas v. Hertz Corp.*, 875 F.Supp.2d 991, 998 (N.D. Cal. 2012) (citing *Olvera v. El Pollo Loco*, 173 Cal. App. 4th 447, 453 (2009)); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

Here, the Option Agreement contains a choice-of-law provision that requires application of California law. *See* Feeney-Orchard Decl. ¶ 3, Ex. A at 11 ("This agreement shall be construed in accordance with the laws of the State of California."). Neither Plaintiff nor Adler dispute the validity of the choice-of-law provision, so the Court will honor the choice of law provision and apply California law to this dispute. *See* Motion at 9; *see generally* Opp'n. Under California law, "a written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Cal. Civ. Proc. Code § 1281 (West 2019). Reasons under California law include fraud, duress, and unconscionability. *See Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 239 (2014). Both Plaintiff and Defendants agree that Plaintiff entered into the Option Agreement with Feeney-Orchard on or about November 4, 2014. *See* FAC ¶ 5; Motion at 9. The pending arbitration between Plaintiff and Feeney-Orchard will decide the application of the disputed terms of the contract, including the purchase price.[8] Plaintiff has not opposed Adler's assertion that the *arbitration* clause is valid and enforceable, nor has she raised fraud, duress, or unconscionability

---

[8] Plaintiff filed an evidentiary objection to Paragraph 2 of Exhibit A of the Lawrence Declaration. *See* Opp'n, Attachment 2. Paragraph 2 of Exhibit A of the Lawrence Declaration reads, "On or about April 11, 2019, Director/Producer Charis Feeney-Orchard filed an arbitration claim against Plaintiff Kimberly Boyle with the IFTA. A true and correct copy of said arbitration claim is attached as Exhibit A." Plaintiff asserts that the paragraph is inadmissible because there is no showing of personal knowledge, a lack of foundation, and that the statement is hearsay. *Id.* Plaintiff does not appear to object to "Exhibit A" itself. *Id.* Exhibit A is the Notice of Arbitration from Feeney-Orchard to Boyle. The Court would overrule the objection. The facts underlying the affidavit could be admitted into evidence at trial. The Court focuses on the admissibility of the contents, not the form, of the evidence in considering a motion to compel arbitration. *See Fraser*, 342 F.3d at 1036; *Macias*, 767 F. Supp. 2d at 1007; *Concat LP*, 350 F. Supp. 2d at 804.

grounds.

Instead, reading Plaintiff's Opposition liberally, it seems she argues that the arbitration clause is unenforceable because the Option Agreement expired without Feeney-Orchard exercising the option. *See* Opp'n at 2. Adler seemingly responds that any dispute about whether the Option Agreement was in effect does not defeat the arbitration clause therein. *See* Reply at 2 (citing *St. Agnes Med. Ctr. v. PacifiCare of California*, 31 Cal. 4th 1187, 1199 (2003)). The Court agrees that, in general, an attack on the validity of the underlying contract as a whole is a question for the arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). Additionally, there is a more relevant line of precedent that holds that arbitration clauses may survive the expiration of the underlying contract when the disputed right or obligation arose under the contract. *See, e.g.*, *Brachfeld v. Hopkins*, No. CV 17-01443 SJO (SSx), 2017 WL 10436075, at *5 (C.D. Cal. Dec. 11, 2017) ("Absent an express agreement to the contrary, however, arbitration agreements 'survive[ ] contract termination when the dispute [is] over an obligation arguably created by the expired agreement.'") (quoting *Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 252 (1977) (alterations in original)). Here, whether Feeney-Orchard validly exercised the Option Agreement is a dispute that arises under that contract, such that Feeney-Orchard and Plaintiff would be required to arbitrate that dispute.

Thus, the Court is inclined to find the arbitration provision valid but based on the somewhat cursory briefing on the issue, would ask the parties to clarify some points during this hearing. Namely, it may be helpful to the Court to hear an explanation of the nature of the dispute between Feeney-Orchard and Plaintiff. For example, does Feeney-Orchard dispute that she failed to exercise the Option Agreement? Does Feeney-Orchard admit a breach, but argue about the price owed to Plaintiff? The parties should clarify the point during the hearing.

### B. Whether the Arbitration Agreement Encompasses the Dispute

Second, the Court determines whether the arbitration agreement encompasses the dispute at issue. When determining the scope, the factual allegations of the party resisting the motion to compel only need to "touch matters" in the contract and "all doubts are to be resolved in favor of arbitrability." *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (citing *Mitsubishi*

*Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n. 13 (1985).  Here, Plaintiff sues Defendants for copyright infringement.  *See* FAC ¶¶ 4-18.  While copyright issues between Plaintiff and Feeney-Orchard are clearly covered by the Option Agreement terms, the dispute involves whether the arbitration clause in the Option Agreement encompasses copyright claims involving nonsignatories.

Adler argues that Plaintiff has no claim for copyright infringement here because, if the Option Agreement, Sales Agreement, and distribution agreements are valid and enforceable, Plaintiff transferred any rights to the Screenplay to Feeney-Orchard.  *See* Motion at 19.  Adler argues that Defendants would not have agreed to use and distribute the Motion Picture *but for* the fact that they believed Feeney-Orchard had acquired rights under contract.  *See id.* (emphasis original).  Thus, they claim that Plaintiff's copyright claim is "inextricably intertwined" with the Option Agreement.  *See id.* at 18.  Plaintiff argues that the current case is a copyright dispute and not a breach of contract action.  *See* Opp'n at 2.  She contends that Feeney-Orchard had not acquired any rights to the Screenplay under the Option Agreement because she failed to pay the purchase price, and thus Defendants violated her copyright when they distributed the Motion Picture.  *See id.*

The Court would find that the copyright claims fall within the sort of "controversy or claim" encompassed by the arbitration provision in the Option Agreement.  If exercised, the Option Agreement transfers "all motion picture rights" for the Screenplay from Plaintiff to Feeney-Orchard including "the copyright thereof."  *See* Feeney-Orchard Decl. ¶ 1, Ex. A at 1.  The Option Agreement also contains a section on copyright.[9]  *See id.* ¶ 3.  The rights under the Option Agreement are dependent on "exercise of the Option and payment of the Purchase Price."  *See id.* ¶ 1.  Plaintiff's allegations need only "touch matters" in the contract, and copyright issues are related enough to the Option Agreement terms that the arbitration provision encompasses the issue of Adler's infringement of the distribution rights.  *See Simula*, 175 F.3d at 721; *see also Packeteer,*

---

[9] Paragraph 9 states:

> (e) Upon exercise of the Option and payment of the Purchase Price, all rights granted or agreed to be granted to Purchaser under this Agreement shall be irrevocably vested in Purchaser and shall not be subject to rescission by the Transferor or any other party for any cause, nor shall said rights be subject to termination or reversion by operation of law or otherwise, except to the extent, if any, that the provisions of any copyright law or similar law relating to the right to terminate grants of, or recapture rights in, literary property may apply . . . .

Feeney-Orchard Decl. ¶ 3, Ex. A at 7-8.

*Inc. v. Valencia Sys., Inc.*, No. C-06-07342, 2007 WL 707501, at *3 (N.D. Cal. Mar. 6, 2007) (finding that copyright issues and validity are subject to arbitration if within scope of arbitration agreement). In short, the question of whether Feeney-Orchard obtained rights to the Screenplay pursuant to the Option Agreement is fundamental to the question of whether Defendants infringed on Plaintiff's copyright. Therefore, the arbitration provision encompasses the instant dispute.

While the FAA requires courts to enforce arbitration if both a valid agreement and applicable scope are found, here the issue involves a third factor: Adler was not a party to the Option Agreement, and the Court must determine whether Adler may enforce an arbitration as a nonsignatory.

### C. Adler's Enforcement of the Arbitration Agreement Against Plaintiff

There are five theories under which a nonsignatory can enforce an arbitration agreement against a signatory: "(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *See Boucher v. All. Title Co., Inc.*, 127 Cal. App. 4th 262, 268 (2005) (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). Adler relies on equitable estoppel to support its theory that it, as a nonsignatory to the Option Agreement, may force Plaintiff to arbitrate. *See* Motion at 16-20. Equitable estoppel may be applied in arbitration in two circumstances:

> As to the first circumstance . . . [e]quitable estoppel applies "when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999).
>
> As to the second circumstance . . . [i]n *any* case applying equitable estoppel to compel arbitration despite the lack of an agreement to arbitrate, a nonsignatory may compel arbitration only when the claims against the nonsignatory are founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause*. In other words, allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough: the allegations of interdependent misconduct must be founded in or intimately connected with the obligations of the underlying agreement.

*Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 218-19 (2009) (emphasis original).

Adler's motion relies on the second application of equitable estoppel. Adler argues that Plaintiff's copyright claim is "inextricably intertwined" with the Option Agreement, the Sales

9

Agreement, and the distribution agreements, all containing arbitration clauses. *See* Motion at 18. It claims that Plaintiff signed the Option Agreement with the expectation that it would form the basis for additional contracts involving distribution. *See id.* Adler cites *Goldman*, 173 Cal. App. 4th at 219, to support its arguments of the validity of a nonsignatory defendant enforcing an arbitration clause and a nonsignatory plaintiff being required to arbitrate.[10] From *Goldman*, the principal concern in applying equitable estoppel is fairness. *See id.* at 220. A "signatory 'cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'" *Id.* (quoting *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000). Plaintiff's Opposition cites *Boucher*, which states the same reasoning that equitable estoppel applies when the signatory relies on the terms of a written agreement in asserting claims against a nonsignatory. 127 Cal. App. 4th at 269-72 (finding that claims that "make reference to and presume the existence of the validity" of the original contract are intimately founded in and intertwined with the original contract, and thus equitable estoppel applies).

Generally, the Ninth Circuit has resisted extending equitable estoppel to allow a nonsignatory defendant to invoke equitable estoppel against a signatory plaintiff. *See Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) ("We have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff, and we decline to expand the doctrine here."); *see also Mundi v. Union Sec. Life Ins. Co*, 555 F.3d 1042, 1046 (9th Cir. 2009) ("In light of the general principle that only those who have agreed to arbitrate are obliged to do so, we see no basis for extending the concept of equitable estoppel of third parties in an arbitration context beyond the very narrow confines delineated [previously]."). However, *Mundi* does not foreclose the possibility of a nonsignatory defendant compelling arbitration against a signatory plaintiff and notes that other Circuits have allowed such situations. *See Mundi*, 718

---

[10] Adler argues, as additional support, that arbitration applies to Plaintiff as a nonsignatory to the Sales Agreement and distribution agreements. *See* Motion at 17-18. Adler does not develop its argument as to the Sales Agreement or distribution agreements. The Court suspects that the analysis may be different because Adler would be a signatory to an arbitration agreement trying to compel a nonsignatory to arbitrate. *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 831 (N.D. Cal. 2007) ("Arbitration is more likely to be attained when the party resisting arbitration is a signatory."). Because the Court is inclined to find that the arbitration provision in the Option Agreement encompasses the copyright claims, the Court need not reach the question of the arbitrability of the claims under the Sales and distribution agreements.

F.3d at 1047. Further, district courts within the Ninth Circuit have permitted nonsignatory defendants to compel arbitration against signatory plaintiffs. *See ValueSelling Assocs., LLC v. Temple*, No. 09 CV 1493 JM, 2009 WL 3736264, at *6-7 (S.D. Cal. Nov. 5, 2009) (holding that a nonsignatory could compel arbitration based on equitable estoppel when a signatory bringing a claim relies on the contract with the arbitration clause and alleges concerted misconduct); *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 841 (N.D. Cal. 2007) (finding that a nonsignatory enforcing arbitration permitted when signatory's claims referred to or presumed the existence of an operating agreement and absent the agreement, none of the claims would lie).

Here, Plaintiff is claiming that Defendants infringed her copyright in the Screenplay by distributing the Motion Picture without authorization. *See* FAC ¶ 15. Plaintiff's claims against nonsignatory Adler arise from Plaintiff's dealings with Feeney-Orchard, as dictated by the Option Agreement. *See id.* ¶¶ 4-18. In the FAC, Plaintiff discusses the terms of the Option Agreement as a basis as to why Defendants violated and continue to violate her copyright. *See id.* For example, she states that "under the terms of the Option Agreement, all the rights to the Screenplay reverted to [Plaintiff]" after Feeney-Orchard did not pay the purchase price, and the subsequent distributions directly violate Plaintiff's rights returned under the Option Agreement. *See id.* ¶¶ 6-15. If Plaintiff is wrong that Feeney-Orchard failed to pay the purchase price, then Feeney-Orchard would have had the right to distribute the Motion Picture to parties such as Defendants. Defendants' allegedly wrongful distribution of the Motion Picture is therefore dependent upon Feeney-Orchard's actions. Thus, Plaintiff relies on the terms of the Option Agreement in asserting her claims against Defendants while trying to avoid arbitration. *See* FAC ¶¶ 4-18. As such, the Court would find that the copyright claim is inextricably bound up in the obligations and terms of the Option Agreement. Thus, the third consideration in the determination to enforce arbitration falls in favor of arbitration.[11] *See e.g.*, *ValueSelling Assocs.*, 2009 WL 3736264, at *8-*10 (S.D. Cal. Nov. 5, 2009) (holding that nonsignatory defendant could compel arbitration against signatory plaintiff alleging a copyright infringement claim).

---

[11] Regarding Adler's application of *NORCAL Mutual Insurance Co. v. Newton,* 84 Cal. App. 4th 64, 71-72, 76, 84 (2000), to enforce a nonsignatory to an arbitration when there is an agency or similar relationship, Adler positions Plaintiff as the nonsignatory to the Sales Agreement with an agency relationship to Feeney-Orchard. *See* Motion at 17, 19. However, the agency-type relationships detailed in *Norcal* include a party's "partners, associates, association, corporation or partnership, and the employees, agents and estates of any of them," and do not include individuals engaged in a one-time business deal, as is the case here. *See Norcal*, 84 Cal. App. 4th at 76 (quoting *Michaelis v. Schori*, 20 Cal. App. 4th 133, 139 (1993)). The agency argument is inapplicable in this instance.

11

### D. Stay of Litigation

Adler moves to dismiss or stay the litigation if the Court compels arbitration. *See* Motion at 20. Adler also argues that even if the Court does not compel arbitration, the Court should stay the litigation pending resolution of the other IFTA arbitrations, including the arbitration between Feeney-Orchard and Plaintiff. *See id.* Plaintiff opposes the Motion, but she provides arguments for only if the Court does not compel arbitration. *See* Opp'n at 5. Under California law, the Court should stay the proceeding until the application for an order to arbitrate is determined, and if arbitrated, until then or an earlier time specified by the Court. Cal. Code Civ. Pro. § 1281.4. The FAA also allows the Court to stay the trial on a party's motion after an issue is referred to arbitration. 9 U.S.C. § 3. The Ninth Circuit has expressed a preference for staying an action pending arbitration rather than dismissing it, especially since an arbitrator can determine questions of arbitrability that may require a return to federal court. *See MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014). Therefore, the Court will stay the action pursuant to 9 U.S.C. § 3.[12]

## IV. Conclusion

Based on the foregoing discussion, the Court is inclined to **GRANT** Adler's Motion to Compel Arbitration but would like clarification as specified above about whether the expiration of the Option Agreement affects the analysis herein. If the Court grants the Motion to Compel Arbitration, it would stay the litigation.

---

[12] Even if the Court were inclined to deny Adler's Motion to Compel, the Court would strongly consider staying the action considering the overlap with issues currently pending in the separate arbitration between Plaintiff and Feeney-Orchard.